**November 18, 2016**

# In the Court of Appeals of Georgia

A16A1357. THE STATE v. T. M. H. DO-046 C

DOYLE, Chief Judge.

After T. M. H., a juvenile, entered into a negotiated guilty plea to armed robbery with a firearm, aggravated assault, and obstruction of a law enforcement officer, he was sentenced by the superior court to ten years with five to serve on the armed robbery count,[1] five years to serve on the aggravated assault count, and twelve

---

[1] The mandatory minimum sentence for armed robbery is ten years in prison. OCGA §§ 16-8-41 (b), 17-10-6.1 (b) (1). However, the State consented to a downward modification from the mandatory minimum. See OCGA § 17-10-6.1 (e) ("In the court's discretion, the judge may depart from the mandatory minimum sentence specified in this Code section for a person who is convicted of a serious violent felony when the prosecuting attorney and the defendant have agreed to a sentence that is below such mandatory minimum.").

months to serve on the obstruction of a law enforcement count.[2] Each of these sentences was to be served concurrently. Later, as T. M. H.'s seventeenth birthday approached, the superior court held a status conference pursuant to OCGA § 49-4A-9 (e) to reevaluate his sentence. As a result of that status conference, the superior court entered orders probating the balance of T. M. H.'s sentence. The State now appeals, and we affirm.

T. M. H. was prosecuted as an adult in the superior court, and he was 16 years old at the time of his negotiated plea. The superior court sentenced T. M. H. to "confinement in such institution as the Commissioner of the State Department of Corrections may direct[.]"[3] Because T. M. H. was sixteen years old at the time of his sentencing, he was committed by the Department of Corrections ("DOC") into the custody of the Department of Juvenile Justice ("DJJ") and housed in a juvenile detention facility.

A few weeks before his seventeenth birthday, the superior court held a status conference at the DJJ's request to review T. M. H.'s commitment order. The superior

---

[2] T. M. H. also pleaded guilty to possession of a firearm during the commission of a felony. The superior court sentenced T. M. H. to five years to serve on that conviction, but suspended that sentence with conditions.

[3] See OCGA § 17-10-14 (a).

court's order reflects that it heard testimony at the status conference "as to [T. M. H.'s] respectful behavior at the Youth Development Campus . . . , his good grades, and his record of no rule violations."[4] The superior court also heard argument from the State that, upon his seventeenth birthday, T. M. H. must be transferred back into the custody of the DOC to serve the remaining portion of his sentence and that the superior court lacked discretion to modify his armed robbery sentence. Conversely, T. M. H. argued that the superior court retained the discretion to allow him to serve the remainder of his sentence on probation pursuant to OCGA § 49-4A-9 (e). Citing to that Code section, the superior court agreed, and entered an order allowing him to serve the remainder of his sentence on probation.

The State argues that the superior court was not authorized to probate the remainder of T. M. H.'s sentence. We disagree.

We note at the outset that, as the parties point out, there is little if any case law interpreting precisely how the applicable statutes govern this scenario. Even so, as in any case, our analysis begins with

> [t]he cardinal rule of statutory construction[, which] is to seek the intent
> of the Legislature[. In so doing,] language in one part of a statute must

---

[4] The appellate record does not contain a transcript of the status conference.

3

be construed in the light of the legislative intent as found in the statute as a whole. . . [, and] we must first focus on the statute's text. In order to discern the meaning of the words of a statute, we must look at the context in which the statute was written, remembering at all times that the meaning of a sentence may be more than that of the separate words. In addition, [when] interpreting a statute, we must presume that the General Assembly had full knowledge of the existing state of the law and enacted the statute with reference to it. We construe statutes in connection and in harmony with the existing law, and as a part of a general and uniform system of jurisprudence, and their meaning and effect is to be determined in connection, not only with the common law and the constitution, but also with reference to other statutes and decisions of the courts.[5]

Also, when "interpreting criminal statutes, it is axiomatic that any ambiguities must be construed most favorably to the defendant. . . [And f]or purposes of statutory interpretation, a specific statute will prevail over a general statute, absent any indication of a contrary legislative intent."[6]

Turning to the issue before us, the governing Code sections are OCGA §§ 17-10-14 and 49-4A-9. OCGA § 17-10-14 provides:

---

[5] (Citations and punctuation omitted.) *Fair v. State*, 288 Ga. 244, 252 (2) (702 SE2d 420) (2010).

[6] (Citations and punctuation omitted.) *Goldberg v. State*, 282 Ga. 542, 544 (651 SE2d 667) (2007).

(a) Notwithstanding any other provisions of this article and except as otherwise provided in subsection (b) of this Code section, in any case where a person under the age of 17 years is convicted of a felony and sentenced as an adult to life imprisonment or to a certain term of imprisonment, such person shall be committed to the Department of Juvenile Justice to serve such sentence in a detention center of such department *until such person is 17 years of age at which time such person shall be transferred to the Department of Corrections to serve the remainder of the sentence*. This Code section shall apply to any person convicted on or after July 1, 1987, and to any person convicted prior to such date who has not been committed to an institution operated by the Department of Corrections.

(b) If a child is transferred to superior court pursuant to Code Section 15-11-561[7] and convicted of aggravated assault as defined in Chapter 5 of Title 16, the court may sentence such child to the Department of Corrections. Such child shall be housed in a designated youth confinement unit until such person is 17 years of age, at which time such person may be housed in any other unit designated by the Department of Corrections.[8]

Thus, this Code section serves as the default instruction on how to house certain child offenders under the age of 17.

---

[7] OCGA § 15-11-561 governs transfers from juvenile court to superior court of certain children between the ages of 13 to 15 accused of serious offenses.

[8] (Emphasis supplied.)

Also applicable to this case is OCGA § 49-4A-9, which provides as follows:

(a) Any child who has previously been adjudged to have committed an act which is a felony if tried in a superior court and who, on a second or subsequent occasion, is convicted of a felony in a superior court may, in the discretion of the court, be sentenced into the custody of the department as otherwise provided by law or be committed as a youthful offender as authorized in Chapter 7 of Title 42; provided, further, that any child convicted of a felony punishable by death or by confinement for life shall only be sentenced into the custody of the Department of Corrections.

(b) Any final order of judgment by the court in the case of any such child shall be subject to such modification from time to time as the court may consider to be for the welfare of such child. No commitment of any child to any institution or other custodial agency shall deprive the court of jurisdiction to change the form of the commitment or transfer the custody of the child to some other institution or agency on such conditions as the court may see fit to impose, the duty being constant upon the court to give to all children subject to its jurisdiction such oversight and control in the premises as will be conducive to the welfare of the child and the best interests of the state; provided, however, that the release of any child committed to the department for detention in any of its institutions under the terms of this chapter during the period of one year from the date of commitment shall be had only with the concurrence and recommendation of the commissioner or the commissioner's designated representative; provided, further, that upon releasing any child adjudicated for committing a delinquent act for the

6

commission of a class A designated felony act or class B designated felony act as defined in Code Section 15-11-2 and committed to the department for detention in any of its institutions under the terms of this chapter, the department shall provide notice to any person who was the victim of the child's delinquent acts that the child is being released. So long as a good faith attempt to comply with the notice requirement of this subsection has been made, the department and employees of the department shall not be liable for damages incurred by reason of the department's failure to provide the notice required by this subsection.

(c) After the expiration of one year from the date of commitment, the committing court shall review the case and make such order with respect to the continued confinement or release of the child back to the committing court for further disposition as the court deems proper.

(d) In the event adequate facilities are not available, the department shall have the right to transfer youths committed to the department under this Code section to the Department of Corrections for incarceration in an appropriate facility designated by the Department of Corrections.

(e) Any child under 17 years of age who is *sentenced* in the superior court and *committed* to the department may be eligible to participate in all juvenile detention facility programs and services including community work programs, sheltered workshops, special state sponsored programs for evaluation and services under the Georgia Vocational Rehabilitation Agency and the Department of Behavioral

Health and Developmental Disabilities, and under the general supervision of juvenile detention facility staff at special planned activities outside of the juvenile detention facility. *When such a child sentenced in the superior court is approaching his or her seventeenth birthday, the department shall notify the court that a further disposition of the child is necessary.* The department shall provide the court with information concerning the participation and progress of the child in programs described in this subsection. *The court shall review the case and determine if the child, upon becoming 17 years of age, should be placed on probation, have his or her sentence reduced, be transferred to the Department of Corrections for the remainder of the original sentence, or be subject to any other determination authorized by law.*[9]

Here, T. M. H. was sentenced to the DOC, but because he was under 17, he was committed by the DOC to the DJJ for confinement.[10] As T. M. H.'s seventeenth birthday approached, the superior court held a hearing and exercised its discretion to modify his sentence pursuant to OCGA § 49-4A-9 (e). By its plain language, that subsection applies to "[a]ny child under 17 years of age who is sentenced in the superior court and committed to the department," and the statutory text reveals no reason why T. M. H. fails to meet this definition. He was sentenced in the superior

[9] (Emphasis supplied.)

[10] See OCGA § 17-10-14 (a).

8

court and committed to the DJJ for custody. Thus, the language in OCGA § 49-4A-9 (e) contains no basis to exclude T. M. H. from the process described therein.

Nevertheless, the State argues that, in this case, the superior court's authority under subsection (e) does not reach T. M. H.'s sentence in this case because (1) language in OCGA § 17-10-14 (a) – "until such person is 17 years of age at which time such person shall be transferred to the Department of Corrections to serve the remainder of the sentence" – is mandatory and precludes any other outcome for these offenders, and (2) OCGA § 49-4A-9 (a) provides that "any child convicted of a felony punishable by death or by confinement for life shall only be sentenced into the custody of the Department of Corrections."

Looking first at OCGA § 17-10-14 (a), nothing in that Code section addresses or limits the superior court's basic sentencing authority with respect to juveniles. By its plain terms, it merely addresses where the child must be committed and states that a child shall be transferred at age 17 to the DOC to serve the remainder of the sentence, without any further language addressing what the sentence might be. It does not say "remainder of *the original* sentence" or otherwise include a limitation on the express authority given to a superior court under OCGA § 49-4A-9 (e). Thus, at most, OCGA § 17-10-14 (a) is ambiguous as to any limitation on the superior court's

9

sentencing authority under OCGA § 49-4A-9 (e), and as stated above, any ambiguity in a criminal statute must be resolved in favor of the defendant.[11]

With respect to OCGA § 49-4A-9 (a), we reach a similar conclusion. That subsection designates the DOC as the only custodian of serious child offenders, but it does not, by its express terms, limit the operation of subsection (e), nor was T. M. H.'s treatment here inconsistent with the requirement that he be sentenced to the custody of the DOC. T. M. H. *was* sentenced into the custody of the DOC (with DOC's discretion as to how to house him), but because he was under 17, he was committed to the DJJ as provided by OCGA § 17-10-14 (a). Further, because he was "sentenced in the superior court and committed to the department," the superior court had authority under OCGA § 49-4A-9 (e) to "determine if . . . , upon becoming 17 years of age, [T. M. H.] should be placed on probation . . . ." This is entirely consistent with the overall statutory scheme as currently written.

Further, preserving discretion over juveniles' sentences is in harmony with the statutory mandate in OCGA § 49-4A-9 (b) that

> [n]o commitment of any child to any institution or other custodial
> agency shall deprive the court of jurisdiction to change the form of the

---

[11] See *Goldberg*, 282 Ga. at 544.

commitment or transfer the custody of the child to some other institution or agency on such conditions as the court may see fit to impose, the duty being constant upon the court to give to all children subject to its jurisdiction such oversight and control in the premises as will be conducive to the welfare of the child and the best interests of the state . . . . [12]

This is part of a unified statutory scheme enacted by the legislature specifically to address juvenile offenders.[13] As required by the rules of statutory construction, we credit this specific scheme over the general sentencing provisions in Chapter 10 of Title 17 in which OCGA § 17-10-14 (a) appears.[14]

Finally, this interpretation comports with the recent whole-court case of *Ga. Dept. of Juvenile Justice v. Eller*,[15] in which this Court addressed a slightly different

---

[12] Subsection (b) also contains notice provisions applicable to the release of certain child offenders, which notice is not at issue here.

[13] For this reason, I am unpersuaded by the State's argument that the general sentencing limitation in OCGA § 17-10-6.1 (e) on downward departures from the mandatory minimum requires reversal in this case.

[14] See *Goldberg*, 282 Ga. at 544. OCGA § 17-10-14 appears in Article 1, alongside general sentencing provisions for, among other things, split sentencing (OCGA § 17-10-1.4), general misdemeanor punishments (OCGA § 17-10-3), sentence review panels (OCGA § 17-10-6), and collection of fines and restitution (OCGA § 17-10-20).

[15] 338 Ga. App. 247 (789 SE2d 412) (2016).

11

question: whether OCGA § 49-4A-9 (e) authorized the superior court to require the DJJ to retain custody of Eller, who pleaded guilty to child molestation and burglary, past his seventeenth birthday instead of transferring him to DOC. We answered in the negative based on OCGA § 17-10-14 (a), which "explicitly and unequivocally provides that, upon turning 17 years old, a juvenile in DJJ custody who was sentenced in superior court as an adult 'shall be transferred to the Department of Corrections to serve the remainder of the sentence.'"[16] Even so, this Court recognized that the superior court *was* authorized to "place him on probation, reduce his sentence, allow his transfer to the Department of Corrections, or fashion any other determination authorized by law."[17] That is precisely what happened to T. M. H. in this case.

In light of the express authority provided in OCGA § 49-4A-9 (e) to review T. M. H.'s sentence before he turned 17, the superior court was authorized to place T. M. H. on probation based on the court's finding of T. M. H.'s rehabilitation, which finding was supported by the record. Accordingly, we discern no legal error requiring reversal, and we affirm the judgment of the superior court.

---

[16] Id. at 249.

[17] (Punctuation and emphasis omitted.) Id. at 249.

*Judgment affirmed. Miller, P. J., McFadden, McMillian and Rickman, JJ., concur. Barnes, P. J., concurs in judgment only. Andrews, P. J., Boggs and Ray, JJ., dissent.*

A16A1357. THE STATE v. T.M.H.

RAY, Judge, dissenting.

I respectfully dissent from the majority's conclusion that OCGA § 49-4A-9 (e) applies to a juvenile that is sentenced to the Department of Corrections (the "DOC"), but is thereafter "committed" by the DOC to the Department of Juvenile Justice (the "DJJ") until his seventeenth birthday. I believe that OCGA § 17-10-14 (a) is the controlling statute in the instant case and that the DJJ was bound to transfer T.M.H. back to the DOC upon his seventeenth birthday. Accordingly, I contend that the trial court's orders probating and releasing T.M.H. was without authority and should be reversed.

The cardinal rule of statutory interpretation is to ascertain the legislature's purpose in enacting a statute and then construe the statute in light of the intent as found in the statute as a whole. *Goldberg v. State*, 282 Ga. 542, 544 (561 SE2d 667) (2007). This Court reviews the trial court's interpretation of a statute de novo. *Hobbs v. State*, 334 Ga. App. 241, 245 (3) (779 SE2d 15) (2015).

The superior court has "exclusive original jurisdiction over the trial of any child 13 to 17 years of age who is alleged to have committed" one of several enumerated violent crimes, including "[a]rmed robbery if committed with a firearm." OCGA § 15-11-560 (b) (8). In the instant case, although T.M.H. was sentenced by the superior court as an adult into the custody of the DOC, he was placed by the DOC with the DJJ until his seventeenth birthday as required by OCGA § 17-10-14 (a), which governs the sentencing of juveniles as adults by a superior court. OCGA § 17-10-14 (a) provides:

> [When] a person under the age of 17 years is convicted of a felony and sentenced as an adult to life imprisonment or to a certain term of imprisonment, such person shall be committed to the Department of Juvenile Justice to serve such sentence . . . until such person is 17 years of age at which time such person *shall be transferred to the Department of Corrections* to serve the remainder of the sentence.

2

(Emphasis supplied.) OCGA § 17-10-14 (a).[1]

Notwithstanding the foregoing statutory mandate, the trial court found that it was authorized to probate the balance of T.M.H.'s sentence upon his seventeenth birthday pursuant to OCGA § 49-4A-9 (e). This statute governs the sentencing and sentence review of juveniles who, unlike T.M.H., were sentenced directly into the custody of the DJJ. OCGA § 49-4A-9 (e) provides, in pertinent part, that:

> Any child under 17 years of age who is sentenced in the superior court and committed to the [D]epartment [of Juvenile Justice] may be eligible to participate in all juvenile detention facility programs and services . . . . When such a child sentenced in the superior court is approaching his or her seventeenth birthday, the [D]epartment [of Juvenile Justice] shall provide the court with information concerning the participation and progress of the child in [such] programs. The court shall review the case and determine if the child, upon becoming 17 years of age, should be placed on probation, have his or her sentence reduced, be transferred to the Department of Corrections for the remainder of the original sentence, or be subject to any other determination authorized by law.

(Emphasis supplied.) OCGA § 49-4A-9 (e). While I recognize that at first glance it might seem that this provision gave the trial court the ability to modify T.M.H.'s

---

[1] See also OCGA § 15-11-34 ("Except as otherwise provided in [OCGA §] 17-10-14, a child shall not be committed to an adult correctional facility or other facility used primarily for the execution of sentences of persons convicted of a crime").

sentence, I do not find that such authority existed under OCGA § 49-4A-9 (e) because

*OCGA § 49-4A-9* applies only to those juveniles *sentenced* by the trial court in the

exercise of its discretion into the custody of the DJJ. See OCGA § 49-4A-9(a).

Although T.M.H. served a portion of his sentence in the custody of the DJJ pursuant

to OCGA § 17-10-14 (a), he was sentenced by the superior court directly to the DOC.

Thus, I find that OCGA § 17-10-14 (a) is the controlling statute in this case.[2]

This Court's recent decision in *Ga. Dept. of Juvenile Justice v. Eller*, __ Ga.

App. __ (789 SE2d 412) (2016), does not require a different result. In *Eller*, the DJJ

appealed from a superior court order sentencing Eller, a juvenile, directly into the

custody of the DJJ until he turned 21 years old. Id. at *1. The *Eller* Court found that

although the superior court was authorized to re-evaluate Eller's sentence upon his

seventeenth birthday under OCGA § 49-4A-9 (e), it was not authorized to require the

DJJ to keep Eller beyond his seventeenth birthday. Id. at *2-3. *Eller* is distinguishable

from the instant case because Eller, unlike T.M.H., was sentenced by the trial court

---

[2] See *Ga. Op. Atty. Gen. No. U96-5* (February 19, 1996). Further, I disagree with the majority because it's holding would essentially render meaningless the trial court's discretion in the first instance whether to sentence a defendant directly to the DJJ; any defendant under age seventeen sentenced to the DOC would go to the DJJ anyway pursuant to OCGA § 17-10-14(a) and, under the majoirty's interpretation, still have the benefit of a reconsideration of his or her sentence under OCGA § 49-4A-9(e).

4

directly into the custody of the DJJ. Additionally, I question the language in *Eller* to the extent that it implies that a defendant who is not directly sentenced to the DJJ, but who instead is sentenced into the custody of the DOC and is transferred to the DJJ until his seventeenth birthday pursuant to OCGA § 17-10-14(a), can have his sentence reviewed and reduced under OCGA § 49-4A-9(e).

For the foregoing reasons, I would hold that the trial court lacked jurisdiction to probate the balance of T.M.H.'s sentence and to order his release. "When a trial court enters a judgment where it does not have jurisdiction, such judgment is a mere nullity; but an appeal from such an illegal judgment will not be dismissed but instead, the void judgment will be reversed." (Citation and punctuation omitted.) *Bush v. State*, 273 Ga. 861, 861 (548 SE2d 302) (2001). See e. g., *State v. James*, 211 Ga. App. 149, 150 (2) (438 SE2d 399) (1993) (as trial court lacked jurisdiction to grant a motion to reconsider a defendant's guilty please, its judgment doing so was an nullity).

I am authorized to state that Andrews, P. J. and Boggs, J. join in this dissent.

5