303 Ga. 348
FINAL COPY

S17G0739.  THE STATE v. HUDSON.

NAHMIAS, Justice.

The specific question presented by this case is whether OCGA § 49-4A-9 (e) gives a superior court the authority to reduce the original prison sentence imposed on a defendant who was under age 17 when he committed an armed robbery.  Because the discretion given to sentencing courts by OCGA § 49-4A-9 (e) is limited by the mandatory minimum sentence requirements of OCGA § 17-10-6.1, we hold that the superior court erred in reducing Timothy Hudson's original prison sentence for armed robbery.  We therefore reverse the Court of Appeals' judgment to the extent that it affirmed that reduced sentence.

1.     On January 2, 2015, Hudson turned 16.  Twenty-four days later, he and two accomplices held a man at gunpoint and stole the man's car, wallet, and cell phone.  All three perpetrators were arrested later that day.  Hudson was indicted as an adult for hijacking a motor vehicle, armed robbery, aggravated assault, possession of a firearm during the commission of a felony, fleeing and attempting to elude, and obstruction of a law enforcement officer.  On June 16,

2015, Hudson entered a negotiated plea in the superior court, pleading guilty to the armed robbery, aggravated assault, firearm possession, and obstruction charges. The State nol prossed the hijacking and fleeing counts. The State agreed to a sentence of ten years — five in prison and five on probation — for the armed robbery conviction, which otherwise would have required a minimum prison sentence of ten years with no option of probation or parole, see OCGA § 17-10-6.1 (b) (1), (e). The court imposed that sentence and also sentenced Hudson to concurrent prison terms of five years for aggravated assault and one year for obstruction and a consecutive prison term of five years for firearm possession. Hudson began serving his sentences at a youth detention facility under the supervision of the Department of Juvenile Justice.

Six months later, as Hudson's 17th birthday approached, the superior court held a hearing with Hudson and the State to "determine if [Hudson], upon becoming 17 years of age, should be placed on probation, have his . . . sentence reduced, be transferred to the Department of Corrections for the remainder of the original sentence, or be subject to any other determination authorized by law." OCGA § 49-4A-9 (e). The court, impressed by accounts of Hudson's excellent behavior at the youth detention facility, entered an order reducing his sentences,

2

over the State's objection. The court reduced Hudson's prison sentence for armed robbery to one year commuted to time served, with the remaining nine years to be served on probation. The court probated the remaining aggravated assault sentence, commuted the obstruction sentence to time served, and suspended the five-year sentence for firearm possession. In accordance with these modifications, the court also entered an order to release Hudson from custody onto probation. The State appealed the resentencing and release orders.

The Court of Appeals affirmed the superior court's orders in a divided nine-judge decision. See State v. T. M. H. 339 Ga. App. 628 (794 SE2d 201) (2016). The five-judge majority opinion held that the superior court was authorized by OCGA § 49-4A-9 (e) to reduce Hudson's sentences. See T. M. H., 339 Ga. App. at 630-635. One judge concurred only in the judgment. See id. at 635. And three judges dissented, contending that OCGA § 17-10-14 (a) prohibited the resentencing. See T. M. H., 339 Ga. App. at 635-637 (Ray, J., dissenting). This Court granted the State's petition for certiorari.

2.    OCGA § 49-4A-9 (e) says, with emphasis supplied:

Any child under 17 years of age who is sentenced in the superior court and committed to the [Department of Juvenile Justice] may be eligible to participate in all juvenile detention facility

programs and services including community work programs, sheltered workshops, special state sponsored programs for evaluation and services under the Georgia Vocational Rehabilitation Agency and the Department of Behavioral Health and Developmental Disabilities, and under the general supervision of juvenile detention facility staff at special planned activities outside of the juvenile detention facility. When such a child sentenced in the superior court is approaching his or her seventeenth birthday, the department shall notify the court that a further disposition of the child is necessary. The department shall provide the court with information concerning the participation and progress of the child in programs described in this subsection. *The court shall review the case and determine if the child, upon becoming 17 years of age, should be placed on probation, have his or her sentence reduced, be transferred to the Department of Corrections for the remainder of the original sentence, or be subject to any other determination authorized by law.*

The State argues that the emphasized language does not apply to Hudson because OCGA § 17-10-14 (a) requires that he be transferred to the Department of Corrections to serve the remainder of his original sentence when he turns 17.[1]

Which juvenile offenders come within the scope of OCGA § 49-4A-9 (e) and

---

[1] OCGA § 17-10-14 (a) says:

Notwithstanding any other provisions of this article and except as otherwise provided in subsection (b) of this Code section, in any case where a person under the age of 17 years is convicted of a felony and sentenced as an adult to life imprisonment or to a certain term of imprisonment, such person shall be committed to the Department of Juvenile Justice to serve such sentence in a detention center of such department until such person is 17 years of age at which time such person shall be transferred to the Department of Corrections to serve the remainder of the sentence. This Code section shall apply to any person convicted on or after July 1, 1987, and to any person convicted prior to such date who has not been committed to an institution operated by the Department of Corrections.

how that provision interacts with OCGA § 17-10-14 (a) are difficult questions requiring meticulous examination of not only those two provisions but the rest of each Code section and their broader statutory and legal contexts.[2]  The Court of Appeals decided those questions, but it did not need to, and we do not decide them today; because the Court of Appeals' holdings on those questions were unnecessary to decide this case, they should be treated as dicta only.  See Mortgage Alliance Corp. v. Pickens County, 294 Ga. 212, 213 (751 SE2d 51) (2013).

Regardless of whether OCGA § 49-4A-9 (e) applies to Hudson, his sentence for armed robbery is controlled by OCGA § 17-10-6.1.  Under that statute, the mandatory minimum ten-year prison sentence for armed robbery cannot be probated without the State's agreement.  Accordingly, the superior court's reduction of Hudson's armed robbery prison sentence was improper.[3]

---

[2]  The special concurrence and the dissent disagree with our holding that OCGA § 17-10-6.1 controls Hudson's sentence and thus obviates the need to decide these difficult questions, but they make little attempt to conduct the meticulous examination that would be required to decide those questions correctly, and the fact that they reach opposite conclusions further suggests that these questions are indeed difficult.

[3]  We similarly need not decide whether the superior court's modifications of Hudson's other sentences, which are not controlled by OCGA § 17-10-6.1, were allowed under OCGA § 49-4A-9 (e). Even if the court was not empowered to make those modifications by OCGA § 49-4A-9 (e), it had that power under OCGA § 17-10-1 (f), which says in pertinent part:

Within one year of the date upon which the sentence is imposed, or within 120

5

3. OCGA § 17-10-6.1 was enacted in 1994 as part of a Sentence Reform Act based on a constitutional amendment that expressly authorized mandatory minimum prison sentences for serious violent felonies. See Ga. L. 1994, p. 2015. The mandatory sentence legislation "was introduced to make truth in sentencing a reality, by ensuring that upon the conviction for a serious violent felony, the offender will serve the full sentence ordered by the court." Campbell v. State, 268 Ga. 44, 46 (485 SE2d 185) (1997). As relevant to Hudson, OCGA § 17-10-6.1 (b) (1) says:

> Except as provided in subsection (e) of this Code section, any person convicted of the serious violent felony of . . . armed robbery shall be sentenced to a mandatory minimum term of imprisonment of ten years, and no portion of the mandatory minimum sentence imposed shall be suspended, stayed, probated, deferred, or withheld by the sentencing court.

Subsection (e) of the Code section says:

> In the court's discretion, the judge may depart from the

---

days after receipt by the sentencing court of the remittitur upon affirmance of the judgment after direct appeal, whichever is later, the court imposing the sentence has the jurisdiction, power, and authority to correct or reduce the sentence and to suspend or probate all or any part of the sentence imposed. Prior to entering any order correcting, reducing, or modifying any sentence, the court shall afford notice and an opportunity for a hearing to the prosecuting attorney. . . .

Hudson's resentencing came less than a year after his initial sentences were imposed, and the State was present at the hearing and filed two briefs in opposition to the superior court's sentence modification. Thus, the Court of Appeals was correct to affirm those other sentences.

6

mandatory minimum sentence specified in this Code section for a person who is convicted of a serious violent felony when the prosecuting attorney and the defendant have agreed to a sentence that is below such mandatory minimum.

Hudson's original sentence took advantage of this exception, as the State agreed that his ten-year mandatory prison sentence could be reduced to five years, with the remaining five years of his sentence served on probation. At no point, however, did the State agree that Hudson could spend nine years of that sentence on probation. Thus, under OCGA § 17-10-6.1, Hudson was required to serve five years in prison and then five years on probation for his armed robbery conviction.[4]

Even assuming OCGA § 49-4A-9 (e) applies to Hudson, the superior court's review of his sentence under that provision as he approached age 17 would not change the result dictated by OCGA § 17-10-6.1. "[A]ll statutes relating to the same subject matter are to be construed together, and harmonized

---

[4] The prohibition against any other way of reducing the prescribed mandatory minimum prison sentence is seen throughout OCGA § 17-10-6.1. The unequivocal direction that — except as provided in subsection (e) — "no portion of the mandatory minimum sentence imposed shall be suspended, stayed, probated, deferred, or withheld by the sentencing court" is repeated in subsection (b) (2), which sets longer minimum sentences for other serious violent felonies. Subsection (b) (3) prohibits treating defendants convicted of serious violent felonies as first offenders, which would allow a probation sentence. And subsections (c) and (f) expressly eliminate virtually all of the sentence-reduction authority of other agencies — the Board of Pardons and Paroles and the Department of Corrections — that normally could reduce the prison time a defendant actually serves under the original sentence imposed by the court.

7

wherever possible." Hartley v. Agnes Scott College, 295 Ga. 458, 462 (759 SE2d 857) (2014) (citation and punctuation omitted). Harmonizing statutes means giving effect to each of them. See Goldberg v. State, 282 Ga. 542, 546-547 (651 SE2d 667) (2007) ("[I]t is a basic rule of construction that a statute or constitutional provision should be construed to make all its parts harmonize and to give a sensible and intelligent effect to each part, as it is not presumed that the legislature intended that any part would be without meaning." (citation and punctuation omitted)).

Of course, if one statute requires something that another prohibits, they cannot be reconciled, and one of the statutes must yield. But that is not the situation here. OCGA § 49-4A-9 (e) requires the superior court to review the sentences of certain children and determine what should happen when they turn 17. OCGA § 17-10-6.1 does not prohibit this review. In turn, under OCGA § 17-10-6.1 (b) (1) and (e), a convicted armed robber must serve at least ten years in prison or a shorter term if (but only if) the State agrees. OCGA § 49-4A-9 (e) does not prohibit this sentencing requirement.

Although OCGA § 49-4A-9 (e) instructs the superior court to determine if the juvenile offender, upon turning 17, "should be placed on probation, have his

8

or her sentence reduced, be transferred to the Department of Corrections for the remainder of the original sentence, or be subject to any other determination authorized by law," that does not mean that each of those options must be available for every offender and every sentence. The fact that the list ends with the catchall "any other determination *authorized by law*" indicates that the statute does not require that the court have the authority to invoke every option every time; instead, the statute is listing *possible* outcomes that *may* be available. If an option is prohibited for a sentence elsewhere in the law, that option is simply not available in that specific context.

In contrast to OCGA § 49-4A-9 (e)'s discretionary language providing possibilities, OCGA § 17-10-6.1 (b) (1)'s language is unequivocally mandatory and allows for very limited exception. Indeed, OCGA § 17-10-6.1 (b) (1) recognizes only one exception — the exception "provided in subsection (e) of this Code section" that allows the parties and court to agree to a departure. The provision does not say, for example, "except as otherwise provided by law." And it does not appear that any provision elsewhere in Georgia's Code expressly purports to create an exception to OCGA § 17-10-6.1's requirements.

Nothing in OCGA § 49-4A-9, a complicated statute that is found in the

9

Department of Juvenile Justice Chapter of the Social Services Code and that makes no reference to OCGA § 17-10-6.1, or in the discretionary language of OCGA § 49-4A-9 (e) itself evinces any intention to create a significant exception to the Criminal Procedure Code's mandatory minimum sentencing scheme. We do not expect the General Assembly to "alter the fundamental details of a [clear criminal sentencing] scheme in vague terms or ancillary provisions — it does not, one might say, hide elephants in mouseholes." Whitman v. American Trucking Assns., 531 U. S. 457, 468 (121 SCt 903, 149 LE2d 1) (2001). Put simply, the inclusion of probation and sentence reduction in the list of possible outcomes in OCGA § 49-4A-9 (e) does not implicitly bestow on superior courts the authority to reduce mandatory minimum prison sentences that is expressly and emphatically revoked by OCGA § 17-10-6.1. See, e.g., In the Interest of A. N., 281 Ga. 58, 60-61 (636 SE2d 496) (2006) (holding that the juvenile court's discretion to place "conditions and limitations" on the transfer of custody of a child was limited by the definition of "legal custody" found in another Code section); Dept. of Human Resources v. Prater, 278 Ga. App. 900, 902 (630 SE2d 145) (2006) (holding that the discretionary provision in one statute allowing the court to "address the repayment of any arrears" did not allow the court to forgive arrears

because such forgiveness was expressly prohibited by another statute).

In sum, reading OCGA § 17-10-6.1 as a limitation on the discretion granted to the superior courts by OCGA § 49-4A-9 (e) effectively harmonizes the two provisions by giving effect to both as they apply to offenders like Hudson.[5]

---

[5] The Court of Appeals' majority opinion did not attempt to harmonize these statutes and instead unpersuasively dispensed with the State's argument based on OCGA § 17-10-6.1 in a one-sentence footnote. The court concluded that OCGA § 49-4A-9 (e), which applies only to juvenile offenders, controlled because it is more specific than the "general sentencing limitation" in OCGA § 17-10-6.1. T. M. H., 339 Ga. App. at 634 n.13. See also id. at 630 ("[F]or purposes of statutory interpretation, a specific statute will prevail over a general statute, absent any indication of a contrary legislative intent.'" (citation omitted)). This conclusion, however, ignores that OCGA § 17-10-6.1 applies specifically to only seven crimes, whereas the first sentence of OCGA § 49-4A-9 (e) on its face applies generally to all crimes. Thus, the rule that the specific prevails over the general in statutory interpretation is not the key to resolving this case. The Court of Appeals' limited treatment of this argument, which the State raised both there and here, does not mean that we cannot or should not address it. Moreover, this Court's interpretation of the Georgia Code is not restricted to the way the parties argue we should read the pertinent statutes or the way lower courts have read them.

The dissent correctly concludes that the specific-over-general canon of statutory construction provides no useful guidance in this case, but then incorrectly concludes that because that *single* canon does not apply, there is an ambiguity in the statutes that can be resolved only by applying the rule of lenity. (The dissent says that it is not applying the rule of lenity but instead applying the rule that criminal statutes must be strictly construed in favor of the accused. But that *is* the rule of lenity. See Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 296 (2012) (Reading Law) (defining the "rule of lenity" as "[a]mbiguity in a statute defining a crime or imposing a penalty should be resolved in the defendant's favor")). Even assuming that the rule of lenity should be applied in the context of a procedural statute, this Court has repeatedly explained that the rule "comes into play only to resolve ambiguities that remain 'after applying all other tools of statutory construction.'" Higdon v. State, 291 Ga. 821, 826 (733 SE2d 750) (2012) (quoting State v. Jackson, 287 Ga. 646, 653 (697 SE2d 757) (2010)). See also Banta v. State, 281 Ga. 615, 617-618 (642 SE2d 51) (2007) ("'The rule of lenity . . . applies only when, after consulting traditional canons of statutory construction, we are left with an ambiguous statute.'" (citation omitted)). The dissent considers one traditional tool of construction — specific statutes prevail over general ones – and finding it unhelpful, ignores others, including the canon that statutes should be construed in harmony. See Reading Law at 180 (discussing the "harmonious-reading canon," according to which "[t]he provisions of a text should be interpreted in a way that renders them compatible, not contradictory"). As explained above, that canon leads to the right decision in this case; it should not be ignored in a rush to read

11

Assuming that OCGA § 49-4A-9 (e) applied to Hudson and thus required the superior court to consider his sentences before his 17th birthday and determine if they should be modified, OCGA § 17-10-6.1 (b) (1) dictated that with respect to his armed robbery sentence, the court had only one choice from the list of OCGA § 49-4A-9 (e) options — "transfer[ ] to the Department of Corrections for the remainder of the original sentence."[6]  For these reasons, the Court of Appeals erred to the extent that it affirmed the superior court's reduction of Hudson's prison sentence for armed robbery, and we reverse that portion of the judgment, although the modification of Hudson's other sentences was properly affirmed.

Judgment affirmed in part and reversed in part.  Hines, C. J., Melton, P. J., Blackwell, Peterson, Grant, JJ., and Chief Judge C. Andrew Fuller concur. Hunstein, J., concurs specially.  Benham, J., concurs in part and dissents in part. Boggs, J., disqualified.

---

statutes in favor of criminal defendants, even if they are juveniles.

[6]  In this way, our conclusion is consistent with the result that the dissenting opinion in the Court of Appeals said was required by OCGA § 17-10-14 (a).  See 339 Ga. App. at 635 (Ray, J., dissenting). Again, however, we need not determine how that statute applies generally or in other situations.  We also leave open the questions of whether a superior court could probate or otherwise reduce a sentence governed by OCGA § 17-10-6.1 during an OCGA § 49-4A-9 (e) review if the original sentence were higher than the mandatory minimum or if the State agreed to deviate from the mandatory minimum at that review.

HUNSTEIN, Justice, concurring specially.

While I agree with the outcome reached in this case, I disagree with the majority's reliance on OCGA § 17-10-6.1 (e) to reverse both the Court of

13

Appeals and superior court. As an initial matter, there is nothing in the record indicating that the State argued before the superior court that OCGA § 17-10-6.1 (e) prevented Hudson from being resentenced without the express consent of the State. Indeed, there is no transcript of the status conference at which this issue was considered,[7] and the State failed to raise this issue in either of its *two* briefs opposing Hudson's motion for resentencing.[8] While the Court of Appeals addressed this argument in passing, State v. T. M. H., 339 Ga. App. 628, 634, n. 13 (794 SE2d 201) (2016), this Court did not grant certiorari on that holding nor does the State challenge this holding in its appellate brief; in fact, this Court has received *zero* briefing on the issue. Under any other circumstances, we would conclude that the State had abandoned this argument and avoid considering it. See, e.g., Supreme Court Rule 22; Moss v. State, 298 Ga. 613, 619 (5) (e) (783 SE2d 652) (2016). Instead, for all that appears, the majority is reversing the judgment of the Court of Appeals on a claim that was neither raised in nor ruled upon by the superior court and has not been pursued by the State in this appeal. As this Court has previously emphasized, there is no "wrong for any reason"

---

[7] "An appellant has the burden of proving trial court error by the appellate record, and must compile a complete record of what transpired in the trial court." Ware v. State, 279 Ga. 17, 18 (608 SE2d 643) (2005).

[8] The record does not include any written motion for sentence reconsideration.

doctrine.[9]  See <u>Moore v. State</u>, 290 Ga. 805, 808, n. 3 (725 SE2d 290) (2012) ("[T]his Court will not reverse a judgment on an issue never raised or ruled on in the trial court or enumerated by the Appellant on appeal.").

As to the question this Court posed when it granted certiorari review, I agree with the approach taken by Judge Ray in his dissent below (which was joined by then Judge Boggs) and similarly conclude that OCGA § 49-4A-9 (a) and (e), when read in conjunction with OCGA § 17-10-14 (a), did not permit the superior court to modify Hudson's sentence.[10]

Finally, though most of these statutes were recently enacted or amended, I would encourage the General Assembly to revisit these provisions to provide further clarity regarding the "commitment" of juveniles (who have not yet attained the age of 17) who are convicted and sentenced as an adult for a felony "punishable by death," by confinement for life, or to a certain term of imprisonment. See OCGA §§ 49-4A-9 and 17-10-14 (a). See also <u>State v. T. M.</u>

---

[9]   I am not questioning this Court's scope of review in appeals following the grant of certiorari. Instead, in light of our recent announcement that under other circumstances we would not sua sponte engage in such analysis benefitting the State, see <u>Dixon v. Sate</u>, 302 Ga. 691 (4) (808 SE2d 696) (2017), I believe we ought not reverse the judgment of two courts on an issue that the State has repeatedly failed to raise.

[10]   Though the majority faults Justice Benham and myself for failing to engage in a "meticulous examination" of the question on which certiorari was granted, curiously, the majority avoids answering the question entirely.

2

H., 339 Ga. at. 628, 636-637 (Ray, J., dissenting).

BENHAM, Justice, concurring in part and dissenting in part.

I dissent to the majority opinion's conclusion that the trial court erred in modifying appellant's sentence for the armed robbery conviction because I conclude the superior court may modify juvenile sentences in accordance with OCGA § 49-4A-9 (e), including the sentence imposed in this case, even though the offense Hudson was convicted of is one that otherwise requires a mandatory

3

minimum sentence.

The majority opinion draws a distinction between juveniles who are convicted of a felony for an offense that requires a mandatory minimum sentence and those whose convictions do not require a mandatory minimum sentence. In a case in which two different criminal statutes may apply, "a specific statute will prevail over a general statute, absent any indication of a contrary legislative intent." (Punctuation omitted.) *Mann v. State*, 273 Ga. 366, 368 (1) (541 SE2d 645) (2001). That means that unless a more specific statute requires otherwise, the clear language of OCGA § 49-4A-9 (e) establishes that all juvenile felony sentences imposed by a superior court are subject to review upon the child's reaching 17 years of age. At that point, the court is directed to "review the case and determine if the child . . . should be placed on probation, have his or her sentence reduced, be transferred to the Department of Corrections for the remainder of the original sentence, or be subject to any other determination authorized by law." Id. By its terms, subsection (e) applies to "[a]ny child under 17 years of age who is sentenced in the superior court and committed to the [Department of Juvenile Justice] . . . ." That includes children who are convicted of a felony as adults and sentenced to life imprisonment or to a term of imprisonment and are temporarily "committed to the Department of Juvenile

Justice" until reaching age 17, pursuant to OCGA § 17-10-14 (a). It also includes children who are convicted of felonies carrying a mandatory minimum sentence.[11] Transferring the convicted child to the Department of Corrections for incarceration in an adult prison for the remainder of the original sentence upon the child's reaching age 17 is just one of the options available. Probating the original sentence is another.

Which statute trumps the other in this case depends upon which statute is deemed to be more specific than the other. The mandatory minimum sentence statutes are more specific with respect to the convicted offense of armed robbery committed with a firearm, whereas OCGA § 49-4A-9 (e), granting the trial court discretion to review and modify the sentence of a convicted juvenile upon the child's reaching the age of 17, is more specific with respect to the individual juvenile offender who has been sentenced for an armed robbery conviction. Given the ambiguity over the issue of which statute is more specific than the other, this Court should apply the rule of statutory construction holding that criminal statutes must be strictly construed against the state and in favor of the

---

[11] I interpret the phrase "any child" to mean what it says, even a child convicted of a mandatory minimum sentence crime. For example, this language demonstrates the scope of subsection (e) is much broader than subsections (a) through (c) of OCGA § 49-4A-9, which, according the language of subsection (a), apply only to juveniles who are convicted of a felony in superior court as repeat offenders.

2

accused.[12]  See, e.g., *State v. English*, 276 Ga. 343, 349 (3) (578 SE2d 413) (2003); *Bankston v. State*, 258 Ga. 188, 189 (367 SE2d 36) (1988).  This rule of construction is applied not only to penal statutes but also to some criminal procedure statutes.  See, e.g., *State v. English*, supra, 276 Ga. at 349 (3) (strictly construing the statutory right to have bail set); *Hughes v. State*, 269 Ga. 819 (2) (504 SE2d 696) (1998) (strictly construing the statute that requires a judge to make a contemporaneous specific finding of a statutory aggravating circumstance before sentencing an accused to life without parole).  Likewise, I am persuaded that this rule also applies to conflicting statutes that involve criminal procedural rules that affect criminal punishment.  Clearly, the discretion to consider options other than transferring a juvenile to the Department of Corrections to serve the remainder of the sentence imposed on the child in an adult prison is more favorable to the convicted juvenile.

I also believe it is important to be informed by the progression of the law

---

[12]  Strictly speaking, the issue posed in this case is not one involving the rule of lenity, since that rule typically applies when a statute criminalizing certain conduct is supplanted by a statute that defines more specific conduct and imposes a potentially harsher punishment.  See, e.g., *McNair v. State*, 293 Ga. 282, 284-285 (745 SE2d 646) (2013) (the rule of lenity applies when an ambiguity exists "that would result in varying degrees of punishment for the same offense"). Further, where there is a general and a specific criminal statute, the rule of lenity is not implicated. Instead, the statutory construction rule, holding that a more specific statute prevails over a general statute, is applied. See *State v. Nankervis*, 295 Ga. 406, 409-410 (2) (761 SE2d 1) (2014).  Moreover, the statutes at issue in this case do not define criminal conduct or its punishment; instead, they involve procedural rules regarding the disposition of a juvenile's sentence for the convicted offense.

governing how convicted juveniles are to be incarcerated and afforded the opportunity for rehabilitation. Over the years, the legislature has amended the procedure for sentencing and imposing punishment upon juveniles convicted of felonies in a manner that illustrates an intent to provide them the opportunity for rehabilitation while in confinement with other children, and not adults (with certain exceptions for those who might pose a danger to other juveniles).[13] In fact, at the same time and in the same Act in which OCGA § 17-10-14 (a) was amended to provide that a juvenile convicted as an adult for a term of imprisonment, like the one imposed in this case, should serve his or her sentence in a juvenile detention center until reaching age 17, the General Assembly also amended Title 49 of the Code to add Chapter 4A, including OCGA § 49-4A-9 (e). See Ga. L. 1992, p. 1983, §§ 19, 24. By that Code section, the legislature provided that the superior court should review the case of "any child" serving his or her sentence at a juvenile detention facility to determine whether, among other things, the child's sentence should be reduced.

In summary, the final sentence of OCGA § 49-4A-9 (e) requires the trial

---

[13] See, e.g., Ga. L. 1987, p. 1335; Ga. L. 1990, p.1930; Ga. L. 1992, p. 1983; Ga. L. 1997, p. 1453; Ga. L. 2000, p. 20; Ga. L. 2013, p. 294; Ga. L. 2015, p. 540.

4

court to determine, once a convicted child who has been committed to the Department of Juvenile Justice reaches 17, the appropriate further disposition of the case. This includes the duty to consider information provided to the court by the Department of Juvenile Justice regarding the child's progress while housed in a juvenile detention facility in arriving at its determination about the options available to the court for further disposition of the juvenile's case, as required by the statute. Since this statute is more favorable to the individual juvenile defendant than the general statute imposing a mandatory minimum sentence on all persons who are convicted of the offense involved in this case, I cannot conclude that the trial court abused its statutory discretion by modifying Hudson's sentence for armed robbery in consideration for what the trial judge found to be exemplary conduct while he was detained at the juvenile facility. I concur, of course, with the majority's conclusion that the trial court did not err by modifying Hudson's other sentences.

Decided March 15, 2018.

Certiorari to the Court of Appeals of Georgia — 339 Ga. App. 628.

Paul L. Howard, Jr., District Attorney, Lyndsey H. Rudder, Kevin C. Armstrong, Assistant District Attorneys, for appellant.

Brandon A. Bullard, for appellee.

Randee J. Waldman, amicus curiae.